I respectfully dissent from the holding of the main opinion that Stewart's Sixth Amendment right to counsel did not attach at his initial appearance held pursuant to Rule 4.4, Ala.R.Crim.P. The main opinion discusses the purposes of an initial appearance, stating that at that appearance the accused is merely informed of his constitutional rights. If Stewart's initial appearance had gone no further, I would agree with the main opinion that an attorney would be unnecessary to protect Stewart at his initial appearance where it does not appear that the prosecutor was present. However, in this case something more than advice as to constitutional rights transpired at the appearance. Stewart's initial appearance before the district court was the first proceeding in which Stewart could challenge the amount of bail set in his case. The State, in its brief, failed to accord any significance to this fact, and the main opinion dismisses this fact in one paragraph.
The recommended range for bail for a defendant accused of a Class A felony is between $3,000 and $30,000. Rule 7.2, Ala.R.Crim.P. According to Rule 7.2, a court can exercise its discretion in setting bail above or below this recommended range. A court bases its decision on several factors, including the defendant's background, reputation, prior criminal record, and employment status, and the nature of the charged offense.Id. In fact, the "advice of *Page 906 
rights" form Stewart signed at the initial appearance stated:
 "In addition, the purpose of this hearing is to determine whether bail should be set in your case, or, if it has already been set, if it should remain the same, be raised, be lowered, or whether you should be released upon your personal recognizance, that is your promise to appear for future court proceedings, or released in the custody of some responsible person. In order to make this determination, it will be necessary for the judge or magistrate to ask you some questions concerning your ties with the community."
(Emphasis added.) The factors considered by the district court in continuing the $25,000 bail amount as set by the arrest warrant are unclear from the record. Stewart, apparently unable to post bond, returned to the Tuscaloosa County jail. Based upon Stewart's subsequent motion to reduce his bond to $5,000, I must conclude that Stewart could have posted a $5,000 bond.
The validity of the district court's exercise of discretion in maintaining the bond at $25,000 is not before us. However, I cannot simply assume that counsel would not have been beneficial to Stewart at the initial appearance, in light of the court's discretion in setting bail according to the recommended range and the court's exercise of that discretion by setting bail near the maximum amount permissible. The main opinion rejects the view that a determination of bail at the initial appearance is a critical stage requiring the presence of counsel under the Sixth Amendment. The main opinion maintains that "[n]o determination of fact with regard to the alleged offense or the defendant's fate is made" at the initial appearance. That there is an advantage to a defendant in being out of jail and therefore more readily accessible to counsel in preparing a defense requires no elaboration. The process of setting bail is not a mechanical process; it involves the exercise of discretion, which greatly affects the "defendant's fate" in his ability to defend the charges against him.
The main opinion minimizes the applicability of Justice Scalia's dictum in McNeil v. Wisconsin, 501 U.S. 171 (1991), by referring to Wisconsin state law. In McNeil, Justice Scalia observed that it was undisputed that McNeil's Sixth Amendment right to counsel had attached and was invoked at his initial appearance for the offense at issue. 501 U.S. at 175. The main opinion concludes that Justice Scalia's observation was dependent upon the fact that Wisconsin state law afforded a defendant a right to counsel upon the issuance of an arrest warrant or the filing of a complaint, and the issuance of the arrest warrant in McNeil took place before McNeil's initial appearance.
The main opinion cites Jones v. State, 63 Wis.2d 97, 216 N.W.2d 224
(1974), as the sole basis for the recognition by the United States Supreme Court of McNeil's right to counsel at the time of his initial appearance. Not only is Jones not cited in McNeil v. Wisconsin, Jones
purports to state a rule drawn not from Wisconsin law but from the teachings of Kirby v. Illinois, 406 U.S. 682, 689 (1972) (the Sixth Amendment right to counsel does not attach before the "initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment"). Finally, if, as the main opinion suggests, I have read more into Justice Scalia's statement than was intended, I am in respectable company. InOwen v. State, 596 So.2d 985, 988-89 (Fla. 1992), the Florida Supreme Court reached a similar conclusion with respect *Page 907 
to Justice Scalia's dictum and observed that commentators were in accord and supported that conclusion. In footnote 6, the Florida Supreme Court stated:
 "See 2 Wayne R. LaFave Jerold H. Israel, Criminal Procedure § 11.2, at 8 (Supp. 1991) ('[T]he initiation of adversary judicial proceedings ordinarily requires a formal commitment of the government to prosecute, as evidenced by the filing of charges. This can occur prior to the issuance of an indictment or information, as where the defendant is brought before the magistrate for an "arraignment" or "first appearance" on charges filed in the form of a complaint.'); 1 Wayne R. LaFave Jerold H. Israel, Criminal Procedure § 6.4, at 468 (1984) ('[A]t least from the time defendant is brought into court and arraigned on the warrant (at which point it or the complaint underlying it becomes a tentative charging document) the Sixth Amendment right to counsel applies.'); Joseph D. Grano, Kirby, Biggers, and Ash: Do Any Constitutional Safeguards Remain Against the Danger of Convicting the Innocent?, 72 Mich. L. Rev. 717, 788-79 (1973) ('[A] convincing argument can be made that a criminal prosecution commences at least with the preliminary arraignment when a formal complaint is filed in court against the accused. . . . Professor Miller, supporting his exhaustive analysis of the charging function with extensive field study data, has called the decision to file a complaint "the heart of the charging process." . . . It would defy common sense to say that a criminal prosecution has not commenced against a defendant who, perhaps incarcerated and unable to afford judicially imposed bail, awaits preliminary examination on the authority of a charging document filed by the prosecutor, less typically by the police, and approved by a court of law.'); Jerold H. Israel, Criminal Procedure, the Burger Court, and the Legacy of the Warren Court, 75 Mich. L. Rev. 1320, 1368-69 n. 226 (1977) (`Even though a complaint has been filed in the process of obtaining a warrant, adversary judicial criminal proceedings may be viewed as being initiated only after the accused is brought before a magistrate on that complaint. . . . This starting point would make sense from an administrative standpoint because counsel for the indigent defendant ordinarily would not be appointed until the defendant has appeared before the magistrate.' (citations omitted [in Owen]))."
596 So.2d at 988-89 n. 6 (emphasis added). The Court also cited commentary suggesting that the use of the word "arraignment" in United States Supreme Court precedent actually referred to what most states, including Alabama, designate as an "initial appearance." In footnote 7, the Florida Supreme Court stated:
 "The term `arraign' simply means to be called before a court officer and charged with a crime. The term commonly has two uses. First, it is used in the general sense to refer to the proceeding where an accused (who is now formally a defendant) is first taken to court and presented before a committing magistrate. The magistrate will confirm that the defendant is the person named in the formal complaint and will read aloud the charges contained in it. The magistrate will generally warn the defendant that he has the right to remain silent, that anything he says will be used against him, and that he has a right to a lawyer's help, either retained or appointed. No responsive pleading is made. The magistrate will then set bail. This proceeding is commonly called a `first appearance,' `initial presentment,' or `arraignment on the warrant.' 1 Wayne R. *Page 908 
LaFave Jerome H. Israel, supra n. 6, § 1.4, at 21. Second, the term `arraignment' refers to the step in the prosecution where the defendant is brought before the trial court — not the committing magistrate — informed of the charges against him, and required to enter a plea. This proceeding is commonly called an `arraignment on the information or indictment.' Id. at 26. As noted above, when the Court in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and [Michigan v.] Jackson[, 475 U.S. 625 (1986)] said that the Sixth Amendment right to counsel attaches at `arraignment,' it apparently was using the term in the first sense."
596 So.2d at 989 n. 7.
The bail determination at Stewart's initial appearance makes his Sixth Amendment right to counsel analogous to the right to counsel treated as undisputed in McNeil. Both defendants were brought before a court for an initial appearance[3] at which bail was set or maintained, and a preliminary hearing was scheduled. McNeil, 501 U.S. at 173. Because I cannot dismiss Justice Scalia's observation in McNeil as to the accused's right to counsel at the initial appearance as merely a peculiarity of Wisconsin law, I see no basis to ignore Justice Scalia's observation, albeit in dictum, when considering Stewart's constitutional rights under virtually identical circumstances.
I find additional supporting authority from the United States Court of Appeals for the Eleventh Circuit to be persuasive. See Stokes v.Singletary, 952 F.2d 1567 (11th Cir. 1992). Like Stewart, Stokes confessed in a police-initiated interrogation after his first appearance in which counsel was appointed. Id. at 1569. The first-appearance proceeding in Stokes was equivalent to Stewart's initial appearance in this State.[4] Although the officers informed Stokes of his Miranda
rights, the officers did not inform Stokes's counsel that they were questioning Stokes. Id. Stokes was later formally indicted of the charges against him. Id. The court in Stokes characterized the first appearance as a "critical stage of the prosecution" in which Stokes's Sixth Amendment right to counsel attached.[5] Id. at 1579, 1580-81. Although it is unknown whether bail was set during Stokes's initial appearance, the Eleventh Circuit stated that the Sixth Amendment right attaches at the first formal proceeding.
Previous Alabama cases have declined to recognize a Sixth Amendment right so as to bar statements made before a defendant is indicted. SeeCallahan v. State, 557 So.2d 1292, 1303 (Ala.Crim.App. 1989) (holding that no basis for a Sixth Amendment challenge existed when the statements were made before the defendant was indicted); see also Waldrop v. State,523 So.2d 475, 478 (Ala.Crim.App. 1987) (holding that the Sixth Amendment right *Page 909 
to counsel was not violated when the petitioner confessed and was subsequently indicted). However, the defendants in those cases did not make an appearance at a judicial proceeding before the statements were made. See Callahan v. State (the defendant was arrested and the statements were then given); Waldrop v. State (the defendant did not receive a post-arrest hearing before giving the statement).
The United States Supreme Court recognizes that adversarial proceedings begin when the "accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both." United Statesv. Ash, 413 U.S. 300, 310 (1973). Although it is unclear from the record whether the prosecution was present at Stewart's initial appearance, he was confronted by the "procedural system." In the trial court's discretion, bail remained at $25,000, and Stewart, unable to make bail, returned to jail. The initial appearance constituted more than a mere opportunity for Stewart to be informed of his constitutional rights; it instead was a critical stage of the proceedings. Because I conclude that Stewart's Sixth Amendment right to counsel attached at his initial appearance, I would reach the merits of Stewart's claims that he invoked his right to counsel at his initial appearance and that his right to counsel could not be waived at his subsequent police-initiated interview. Therefore, I dissent.
Houston and Johnstone, JJ., concur.
[3] The Wisconsin rule of criminal procedure relating to an accused's initial appearance is similar to the rule in Alabama. In Wisconsin, the judge must inform the defendant of the charges against him, of his right to counsel, and of his right to a preliminary hearing. Bail may be set at the initial appearance. Wis. R.Crim.P. 970.02 (2003).
[4] The "first appearance" in Florida requires the judge to inform the defendant of the charges against him, of his right to remain silent, and of his right to counsel. The judge may also determine the conditions of release. Fla.R.Crim.P. 3.130 (2002).
[5] The case was remanded to determine whether Stokes had waived his Sixth Amendment right before the subsequent questioning. However, if Stokes was convicted after Michigan v. Jackson, 475 U.S. 625 (1986), was decided, then his waiver would have been ineffective to waive his Sixth Amendment right to counsel.